135 N.J. Super. 582 (1975)
343 A.2d 820
SARA J. KUHNER AND FREDERICK KUHNER, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
AND
SYLVIA KUHNER, PLAINTIFF,
v.
MARLYN MANOR, INC., A NEW JERSEY CORPORATION; HENRY R. REITHEIMER; VIRGINIA M. REITHEIMER; HORACE SMITH, UNIVERSAL STRIPLING; KARL HEMPEL AND OWEN HAND, DEFENDANTS, AND CHRYSLER CORPORATION, A FOREIGN CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 16, 1975.
Decided July 31, 1975.
*584 Before Judges MICHELS, MORGAN and MILMED.
Mr. Douglas R. Kleinfeld argued the cause for appellant (Messrs. Conway, Reiseman, Michals & Wahl, attorneys).
Mr. James L. Cooper argued the cause for respondents (Messrs. Cooper, Perskie, Neustadter & Katzman, attorneys; Mr. Harry Miller on the brief).
PER CURIAM.
Pursuant to leave granted by this court, defendant Chrysler Corporation (Chrysler) appeals from an order in the Law Division setting aside a jury verdict of no cause for action in favor of Chrysler, and granting a new trial to plaintiffs limited solely to the issue of the liability of Chrysler for plaintiffs' injuries.
Plaintiff Sara J. Kuhner was struck while walking on a sidewalk in a shopping center in Rio Grande, New Jersey, by a 1964 Plymouth station wagon owned and operated by defendant Horace Smith (Smith). Smith's station wagon moved forward from the parking area of the shopping center, mounted the curb and struck plaintiff on the sidewalk, pinning her against a brick retaining wall and causing her serious personal injuries. She originally filed suit against Marlyn Manor, Inc., the owner and operator of the shopping *585 center, and its principal stockholders, Henry R. Reitheimer and Virginia M. Reitheimer, charging them with negligence in its design and construction, and Smith charging him with negligence in the operation of the station wagon, including the failure to select the right gear in which to operate the vehicle. Her husband sued per quod, and her daughter Sylvia Kuhner sued to recover damages for the personal injuries she sustained when also struck by the Smith vehicle. Plaintiff subsequently joined, among others, Chrysler as a defendant, charging it with (1) negligence in the design and manufacture of the station wagon, specifically the gear selection system and its component parts, (2) breach of warranty, and (3) strict liability in tort. In their pretrial memorandum plaintiffs detailed their allegations against Chrysler as follows:
This defendant was careless and negligent in the manner in which it designed and installed said gear selection system and said defendant knew or should have known that the precarious manner in which this selection system was designed would probably lead to one selecting the wrong gear. This defendant failed to install a correct and proper gear selection system and were further negligent in failing to forewarn the users of said vehicle of the improper design and installation of said gear selection system. This defendant permitted this hazardous condition to exist in the Smith car in particular all resulting in the creation and maintenance of a nuisance. Defendant, Chrysler Corporation, held itself out to the public as a manufacturer of motor vehicles and accordingly did warrant that said vehicle would be fit for the purposes for which it was intended and said defendant did breach said warranty by failing to design and manufacture a proper motor vehicle with a proper gear selection system within it all resulting in damage to the plaintiffs.
This defendant further placed into the stream of Commerce a motor vehicle which was a hazard to the public in general and to the plaintiffs in particular, in that the said vehicle was improperly designed and manufactured regarding said gear selection system all resulting in said defendant being held strictly liable in tort for said injuries, damages and losses sustained by the plaintiffs.
Prior to trial plaintiff and her husband settled with Marlyn Manor, Inc., dismissing the suit against it and its principal stockholders. Plaintiff Sylvia Kuhner settled *586 with defendant Smith and dismissed her suit against all defendants.
From the evidence developed at trial a jury could have found either that Smith intended to put his vehicle in reverse in order to back out of the parking lot but instead engaged the drive gear, as a result of which the vehicle went forward and struck plaintiffs, or that Smith, after backing out of the parking lot, put his vehicle in drive in order to avoid oncoming traffic and struck plaintiffs. Plaintiffs' theory as to Chrysler's liability was predicated on a defective gear selection system. Plaintiffs claimed that the gear selection system was designed in such a manner as to increase the risk that someone would hit the wrong gear button. Expert opinion presented on behalf of plaintiffs indicated the defect to be that the "reverse" and "drive" gear shift buttons were not sufficiently defined and differentiated in color, texture, shape and feel and that a driver would have difficulty in selecting the proper gear shift button, relating this alleged defect to Smith's inadvertent selection of the wrong gear. Expert testimony presented on behalf of Chrysler supported its contention that the design was safe for normal operation and that the buttons were totally separate from one another and clearly marked with an imprint to designate their function so that the driver would have no difficulty selecting the appropriate gear.
Special interrogatories were submitted to the jury which found that Chrysler was not negligent in the design or manufacture of the push button gear selection system, was not strictly liable in its design or manufacture and did not breach any warranty to the public concerning the push button gear system. The jury also found that Marlyn Manor, Inc., was negligent in the design and construction of the parking area of the shopping center and that Smith was negligent in the operation of his vehicle. The jury awarded damages to plaintiff in the amount of $300,000 *587 and to her husband for his per quod claim in the amount of $50,000.
Plaintiffs moved for a new trial only on the issue of Chrysler's liability for the reason, among others, that the jury instruction given by the trial court was incorrect in that the trial judge failed to inform the jury that Chrysler's duty to warn was not only applicable to its theory of liability based on negligence but also as to its theory of liability based on strict liability in tort. The trial judge held that "It is clear that the instruction on a duty to warn did apply only to the negligence theory of liability. The jury was never told that under strict liability in tort the manufacturer has a duty to warn users of the dangers of a perfectly made product." See Kuhner v. Marlyn Manor, 129 N.J. Super. 554, 558 (Law Div. 1974). Portions of the charge pertinent to the issue which we deem appropriate to quote at length read as follows:
Now, the manufacturer of an article, such as an automobile, which, while not inherently dangerous may become so when put to the use to which it is intended, owes to the public the duty of employing reasonable care, skill and diligence in its manufacture, assembly and inspection, and in exercising reasonable diligence to see that it is reasonably fit for the purpose for which it is intended. This duty or [sic] reasonable care extends not only to the purchaser of the vehicle but to all persons who may be reasonably expected to use, and to go further, the manufacturer of a product is under a duty of exercising reasonable care in the design and manufacture of the product to protect those who may reasonably be expected to be in the area of the use of the product from unreasonable risk of harm while it is being used for the purposes for which it is intended.
The same duty applies where the use made of the product is one that the manufacturer should reasonably have foreseen. To put it another way, the manufacturer is under a duty to exercise reasonable care in the production of its product, to avoid unreasonable risk of harm from the use thereof by those likely to be exposed to such risk. Thus, the maker of an article which is intended for sale or use by others is required to use reasonable care and skill in designing and producing, so that it is reasonably safe for the purpose for which it is intended, as well as for other uses that are reasonably foreseeable. This duty includes the obligation of exercising reasonable care in the inspection of the product for the purpose of locating latent or *588 patent defects therein. This duty to exercise reasonable care extends to anyone who may reasonably be expected to be in the vicinity of the chattel's probable use and to be endangered in the event that it is defective.
In order for the manufacturer to be liable under this rule that I have just given you, the defect which is asserted to have been a proximate cause of the failure or condition which brought about the plaintiffs' injury must be shown to have been one which existed at the time the article left the control of the manufacturer. Now, the manufacturer or processer of materials sold is under a duty to make a reasonable inspection and test of such product to discover or disclose discoverable defects. This duty calls for and requires the exercise of reasonable care in applying reasonable tests to detect discoverable defects and deficiencies in the article or product. For a guidepost as to what is reasonable inspection, you must weigh the difficulties of effective discovery of the defect in question against the dangers inherent in the article produced or processed. The greater the danger which inheres in the article produced or processed, the more precise the inspection must be in order to be reasonable.
Now, a manufacturer not only owes a duty to exercise reasonable care in the manufacture and inspection of this product, but likewise owes a duty, owes a companion duty to warn buyers and users of the latent or hidden limitations of even a perfectly-made article, the use of which is dangerous if the user is ignorant of those limitations and the manufacturer has no reason to believe that the user will recognize the danger.
Now, ladies and gentlemen of the jury, there is a concept in our law which is referred to as a manufacturer's strict liability and tort. That is this: The manufacturer of a product is liable if the product was defective, that is not reasonably fit for the ordinary purposes for which such products are sold and used, and the defect arose out of its design or manufacture or while the product was in the control of the manufacturer, and it proximately caused injury or damage to the ultimate purchaser or reasonably foreseeable consumer or user. Proof of the manufacturer's negligence in the making or handling of the article is not required. In order to hold the defendant liable in this case, in such a case of strict liability, you must determine by the preponderance of the believable evidence that, one, the product manufactured by the defendant was not reasonably fit for the ordinary use for which it was intended; two, the defect arose out of its design or manufacture or while the product was in the control of the manufacturer; three, the defect proximately caused injury or damage to the plaintiff; four, the plaintiff was the ultimate purchaser or reasonably foreseeable consumer or user.
Now, again, the burden of proof, as I have said before and explained it to you, the burden of proof is by the preponderance of the believable evidence, and as to these matters rests upon the party who asserts this contention.
*589 Now, let me repeat that. In order to hold the defendant liable under the concept of strict liability, the product manufactured by the defendant, you must determine that the product manufactured by the defendant was not reasonably fit for the ordinary use for which it was intended; two, that the defect arose of its design or manufacture, or while the product was in the control or [sic] the manufacturer; three, the defect proximately caused injury or damage to the plaintiff; and four, the plaintiff was the ultimate purchaser or a reasonably foreseeable consumer or user.
Plaintiffs did not object to the charge nor did they submit a specific request to charge that the duty to warn was applicable to the theory of strict liability in tort. Nonetheless, the trial judge set aside the jury's verdict in favor of Chrysler and ordered a new trial solely on the issue of the liability of Chrysler.
We are convinced that the trial judge erred in granting plaintiffs a new trial on the issue of the liability of Chrysler. The judge properly and fully instructed the jury with respect to the theories of liability upon which plaintiffs based their claims against Chrysler. The jury was specifically charged that Chrysler had a duty to warn buyers and users of the latent or hidden limitations of even a perfectly made article. A fair reading of the entire charge discloses that the trial judge did not limit or restrict Chrysler's duty to warn to the theory of liability based on negligence, and that it applied to all theories of liability.
Moreover, there was no justification for granting plaintiffs a new trial for the reason that the trial judge failed to "tell the jurors that in order to find for plaintiff against Chrysler Corporation it had only to find liability under any one of the three theories advanced, and not that they had to find Chrysler liable on all theories." Kuhner v. Marlyn Manor, supra, at 560. There was no real possibility that the jury might have been misled by the failure of the trial judge to specifically instruct them in this regard nor was the failure of the trial court to do so "clearly capable of producing an unjust result." R. 2:10-2. *590 Beyond this our study of the entire record satisfies us that the verdict in favor of Chrysler was not a miscarriage of justice under the law and that the trial judge mistakenly exercised discretion in setting aside the verdict and granting a new trial to plaintiffs as to Chrysler's liability. See R. 2:10-1. Accordingly, the order for a new trial entered in the Law Division is reversed and the judgment in favor of Chrysler be and hereby is reinstated.